Richard Glenn BENTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 54594.

Court of Criminal Appeals of Texas,
Panel No. 3.

Oct. 25, 1978.

Rehearing Denied Jan. 31, 1979.

Russell C. Busby, Amarillo, for appellant.

Randall L. Sherrod, Dist. Atty. and Richard L. Wilcox, Asst. Dist. Atty., Canyon, for the State.

Before ROBERTS, ODOM and TOM G. DAVIS, JJ.

OPINION

ROBERTS, Judge.

This is an appeal from a conviction for possession of marihuana under two ounces. Art. 4476–15, Sec. 4.05(b)(3), Vernon's Ann. Civ.St. After finding appellant guilty, a jury assessed his punishment at one hundred twenty days in jail and a fine of one thousand dollars.

Appellant's first contention is that his motion to suppress the marihuana should have been granted because the search which resulted in the discovery of the marihuana was the product of and sequel to an unlawful stop. We agree and reverse.

Officer Austin Brown of the Amarillo Police Department testified that he stopped appellant at approximately 4:45 on a Sunday morning. There was little other traffic in that neighborhood. There had been perhaps three recent burglaries in that area. These burglaries had "usually" taken place between three and five in the morning.

Although Brown stated that he saw the appellant violate no laws, he testified that appellant and another individual had tried to "elude" two other officers just before Brown stopped him. When pressed, how-

ever, Brown conceded that by "eluding" he meant nothing more than a "zigzag" pattern of driving. The record makes it clear that this driving pattern was *not* part of any overt attempt by appellant to avoid an explicit lawful detention.[1]

Brown then admitted, and repeated several times, exactly what this record reveals—that he stopped appellant "merely on suspicion."[2] This is not sufficient to constitute probable cause.

This case is governed by our holding in *Tunnell v. State*, 554 S.W.2d 697 (Tex.Cr. App.1977). There the officer saw the defendant and two other men in a car with its lights off. The car was parked in a well-lighted hospital parking lot. The officer decided that this "activity" was suspicious, so he drove down the street, turned around, and returned to the area around the parking lot. The car had by that time turned on its lights and begun driving along the street. The officer then stopped the car. As in the instant case, the officer in *Tunnell* observed no traffic violation and stated that the defendant engaged in no criminal activity, made no furtive gestures, and took no evasive action after the officer began his pursuit. We held that the stop was constitutionally prohibited and required reversal.

The facts which allegedly support probable cause in this case are not even as strong as those in *Scott v. State*, 549 S.W.2d 170 (Tex.Cr.App.1976). In that case the officer was patrolling at 1:30 a. m. in what he described as a "high crime area," the same designation given to the area of appellant's arrest in the case at bar. In *Scott*, there had been reports of hubcap thefts in the area.

The officer in *Scott* testified that he saw the defendant's car coming from an area of fashionable newer townhouses. He also stated that normally there were no cars on that street at that time. There were no street lights in the area. As the officer passed the defendant's car, he saw that it was occupied by two black males and that there was what appeared to be "sheeting material" propped up in the back seat of the car. The officer then stopped the car to investigate. We held that this stop was unjustified and the subsequent search was invalid.

Numerous other cases of this Court require that we reverse this case.[3] It was nothing more than the product of an inarticulate hunch which led to an unconstitutional search.

1. Compare V.T.C.A., Penal Code, Section 38.04 (Evading Arrest), and see Art. 6701d, Section 186, V.A.C.S. (Fleeing or Attempting to Elude a Police Officer). Brown explained this "zig-zag" pattern as "go[ing] down approximately a block and turn[ing] and go[ing] another block and turn[ing], back and forth . . . ."

2. The arresting officer's testimony at trial on the merits indicates that he considered such a stop proper police behavior:
   "Q. [By Defense Counsel]: All right. Now, as an officer patroling a beat, what gives you probable cause to stop an individual?
   "A. Any particualr type of situation.
   "MR. ROPER [Prosecutor]: Objection, Your Honor. I believe that calls for a legal conclusion here—
   "THE COURT: Okay I'm going to sustain your objection. Mr. Busby, rephrase your question. I think you will get the same thing.
   "MR. BUSBY: All right.
   "Q. (By Mr. Busby) When you are driving down the street, and you stop someone, is it not correct that you have to have probable cause to make that stop?
   "A. Yes, sir. It is.

   "Q. And, how do you get probable cause to make an arrest?
   "A. It can be a traffic violation.
   "Q. All right. Anything else?
   "A. Yes, sir. Vehicle driving in a part of town that I know shouldn't be there on my beat. I usually know a lot of the vehicles that belong there. If I see a subject I do know, and he's not usually out at that time, I may stop him just to see what he's doing."

3. See, e. g., *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr.App.1976); *Hinson v. State*, 547 S.W.2d 277 (Tex.Cr.App.1977); *Phillips v. State*, 548 S.W.2d 44 (Tex.Cr.App.1977); *Ceniceros v. State*, 551 S.W.2d 50 (Tex.Cr.App. 1977); *McDougald v. State*, 547 S.W.2d 40 (Tex.Cr.App.1977); *Faulkner v. State*, 549 S.W.2d 1 (Tex.Cr.App.1976); *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972); *Talbert v. State*, 489 S.W.2d 309 (Tex.Cr.App.1973).

   Cf. *Amorella v. State*, 554 S.W.2d 700 (Tex. Cr.App.1977); *Drago v. State*, 553 S.W.2d 375 (Tex.Cr.App.1977).

The judgment is reversed and the cause remanded.

TOM G. DAVIS, Judge, dissenting.

I dissent to the majority's holding that the officer lacked authority to make the initial stop of appellant.

The law is well settled that a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be the most reasonable course in light of the facts known to the officer at the time. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App.). In such a situation, the prosecution need not demonstrate that probable cause to arrest a suspect existed at the inception of the detention, although such a detention is within the protection of the Fourth Amendment of the United States Constitution. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and Article 1, Section 9, of the Texas Constitution; *Armstrong v. State, supra*. We have frequently said that circumstances short of probable cause for arrest may justify temporary detention for the purposes of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual. *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr.App.); *Ablon v. State*, 537 S.W.2d 267 (Tex.Cr.App.); *Mann v. State*, 525 S.W.2d 174 (Tex.Cr.App.). It is clear that an occupant of an automobile is just as subject to a brief detention or stop as is a pedestrian. *Adams v. Williams, supra; Wood v. State*, 515 S.W.2d 300 (Tex.Cr. App.); *Hazel v. State*, 534 S.W.2d 698 (Tex. Cr.App.).

In *Shaffer v. State*, 562 S.W.2d 853 (Tex. Cr.App.), this Court, in addressing the question of circumstances that may justify temporary detention for investigation, said:

"There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful."

See *Armstrong v. State, supra*, citing *Irwin v. Superior Court of Los Angeles County*, 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969).

The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct was reasonable. *Shaffer v. State, supra*. The circumstances in the instant case were (1) The time of the stop was "4:45 in the morning" and "there had been a number of burglaries in the area" in recent time, the arresting officer stating, "three times in that particular area" and they had occurred usually between three and five in the morning. The officer testified that he had been told to patrol the area quite heavily. (2) The arresting officer had been advised by police radio that appellant and his companion "had tried to elude" other officers who had been following them.

Since the totality of the circumstances may be considered, it is not necessary for us to determine if either of the foregoing sets of facts standing alone would justify the stop. It is necessary, however, to make a careful examination of each of the circumstances. With respect to the officer's knowledge that crimes had been committed in the area, we find the facts presented herein to be more persuasive than those in *Talbert v. State*, 489 S.W.2d 309 (Tex.Cr. App.).

In *Talbert*, officers who had stopped the defendant in the University of Texas area in Austin between 1:30 and 2:00 a. m. gave as the reason for such stop the hour of the night and the officers' opinion that the entire University area "could be classified as a high crime area." The arresting officer, in defining "high crime area," included collisions and violations of the Uniform Traffic Act. This Court stated, "We are unwilling to blanket-label such a substantial portion of Austin as a 'high crime area' in order to

justify the stopping of appellant's automobile." In the instant case the arresting officer's knowledge relative to a "high crime area" was much more specific as to the crimes being committed, the officer relating that a number of burglaries had been committed in the area. Further, the area in which the crimes had been committed and the times of commission were much narrower than in *Talbert.*

With regard to the information received by the officer that appellant had tried to elude other officers, the record reflects the following testimony by Officer Brown on cross-examination:

"Q. Was the only reason you stopped him was because it was 4:35 in the morning and it was a high crime rate in that area?

"A. Yes, sir. And also that the other two, Officer Wheeler and Officer Hudson, had been following the subject for some time.

"Q. Is that the only reason you had to—

"A. They stated on the radio that the subjects had tried to elude them several times.

"Q. And what does that mean?

"A. It means they would go down approximately a block and turn and go down another block and turn, back and forth. And also they drove around in that area, Stephen F. Austin school, where Mr. Benton dropped off the other subject."

The fact that the officer may have been made aware that appellant and his companion were trying to "elude" the other officers by turning after they had driven a block and by a "zigzag" pattern of driving rather than by traveling at a high rate of speed is of little consequence. The important factor is that Officer Brown was advised that appellant was trying to elude the officers, not the method employed.

The legality of the stop is determined only by the facts known by the arresting officer at the time of arrest. *Talbert v. State, supra.* The fact that the officer may have displayed a misconception about the law governing probable cause to arrest an individual at the trial on its merits is of no relevance in the resolution of the issue before us.

The totality of the circumstances known to the officer at the time was such as to create a reasonable suspicion on his part that some activity out of the ordinary was occurring or had occurred, that such activity was related to crime, and that appellant was connected with that activity. The officer's action in stopping the vehicle appellant was driving to determine his identity or to maintain the status quo momentarily while obtaining more information was reasonable. *Adams v. Williams, supra* ; *Terry v. Ohio, supra* ; *Gholson v. State*, 542 S.W.2d 395 (Tex.Cr.App.); *Balli v. State*, 530 S.W.2d 123 (Tex.Cr.App.); *Hazel v. State*, 534 S.W.2d 698 (Tex.Cr.App.); *Wood v. State*, 515 S.W.2d 300 (Tex.Cr.App.).

I dissent.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

DALLY, Judge.

There are additional facts which were not stated in either of the opinions on original submission. Amarillo police officers, Wheeler and Hudson, observed the appellant driving in the downtown area of Amarillo. They started following him at approximately 4:30 a. m. Stephen Stubblefield was a passenger in the appellant's vehicle. The officers followed the appellant's vehicle as it was driven toward the south part of Amarillo. The officers, by the use of their radio, obtained the help of several other officers who were on patrol in the South part of the city. The officers, working together in different automobiles, followed the appellant's vehicle. The appellant drove to the Stephen F. Austin Junior High School parking lot. Stephen Stubblefield, the passenger, left the appellant's vehicle and got in a parked automobile; both vehicles left the parking area. An officer stopped Stubblefield and ascertained that he was driving his own automobile. Other officers stopped the appellant. Although

the appellant was stopped in an area where numerous burglaries had been recently committed, the officers could not have reasonably thought the appellant had just committed a burglary or any other crime in that area because the officers had seen him driving in the downtown area for a period of time and had then followed appellant to the south part of Amarillo. According to the testimony of the officers the appellant was under their surveillance all of this time except for a momentary lapse. The officers did not, in view of these facts, have probable cause to arrest the appellant, nor did they have sufficient reason to temporarily detain the appellant. Taking into account these additional facts we remain convinced that the majority of the panel reached the right result on original submission.

The State's motion for rehearing is overruled.