**Martin DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–94–340 CR.**

Court of Appeals of Texas,
Beaumont.

Resubmitted April 18, 1996.

Decided May 15, 1996.

**784**

Ray Bass, Austin, for appellant.

Clyde M. Herrington, District Attorney, Lufkin, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION ON FURTHER MOTION FOR REHEARING

STOVER, Justice.

We withdraw our prior opinions filed on March 6, 1996, and April 4, 1996, and substi-

tute the following. Convicted of possession of marijuana in a trial before the court, appellant was sentenced to five years in the Texas Department of Criminal Justice, Institutional Division, and was fined $10,000. From this conviction, Davis appeals.

### Facts

On September 14, 1993, at approximately 1:00 a.m., appellant was driving through Lufkin, Texas, with a female passenger, Ms. Augustine. According to officers working traffic that night, they observed a vehicle weaving line to line in a lane of traffic. Officer Weatherford testified that the weaving pattern occurred about three times. Although there was no specific traffic violation, since the vehicle, though weaving, never actually crossed over the line separating the lanes, Officer Bivins testified he stopped the car because he was suspicious that the driver was intoxicated or tired.

After the officers effected the traffic stop, appellant immediately got out of his vehicle and met Officer Bivins at the door of the patrol unit, just as the officer was exiting his vehicle. It was Officer Bivins' opinion that Davis kept moving away from his own car, because he did not want the officer near it. Leaving Davis with Officer Weatherford, Officer Bivins walked up to appellant's car to question the female passenger about her destination, residence, and purpose on the trip. Standing at the passenger's door, he did not detect an odor of alcohol or any type of drug coming from the vehicle. Furthermore, Officer Bivins stated that he had detected no odor of alcohol on appellant's person. Based on those observations, the officer testified that, while he stood at the passenger door talking to Ms. Augustine, he made the determination that appellant was not intoxicated. At that point, the initial purpose of the traffic stop was completed.

In her responses to the officer's questions about their trip, Officer Bivins stated that Augustine told him she was merely along for the ride. She later indicated she and Davis had been looking at some property in Houston. Officer Bivins then asked similar questions of appellant. Appellant said he was

from New York, had gone to Houston to look at some apartment buildings for investment purposes, and had brought Ms. Augustine along to help him assess the property. Officer Bivins concluded that appellant's statement in regard to the purpose of the trip was inconsistent with Ms. Augustine's statements. Furthermore, it was Officer Bivins' opinion that appellant did not appear to be a person who would have money to invest in apartment complexes. The borrowed car, appellant's clothing, his hair, and the way he talked "did not appear to (sic) someone who is on a business trip." In addition to questioning Davis and Augustine, the officers ran background checks on them; Davis had no history of convictions and his drivers' license was valid. A license check on the vehicle revealed the car was not in Davis' name; however, the check also revealed the vehicle was not reported stolen. According to Davis, the car belonged to his girlfriend who was not along on the trip; Ms. Augustine said the car belonged to Davis. The insurance papers on the vehicle were in proper order. In contrast to Davis, the background check on Ms. Augustine indicated she had an arrest and conviction for a drug offense.

After the initial questioning of Davis and Augustine, the officers asked appellant for consent to search the vehicle. Davis refused to give consent. Officer Bivins did a pat down search of appellant and found no weapons or drugs. The officers then informed appellant that he was free to leave at any time, but the vehicle was being detained for an on-scene investigation.

The canine unit was then called out, and, once on the scene, the narcotics dog made a positive alert on the trunk of the vehicle. Upon request, appellant handed the keys to Officer Weatherford who opened and searched the trunk. Inside the trunk, the officers found various items, including male and female clothing and personal hygiene items loose in the trunk, along with a suitcase containing another bag inside it, which in turn contained what turned out to be marijuana.

The record on appeal includes a transcript, statement of facts, and a videotape of the temporary investigative detention that night;

this court has considered all parts of the record in its review.

Appellant raises the following two points of error on appeal:

### Point of Error One

The evidence is legally insufficient to sustain appellant's conviction for possession of marijuana.

### Point of Error Two

The trial court reversibly erred in denying appellant's motion to suppress evidence obtained by an unlawful search.

### *Point Of Error One*

### *Insufficiency of the Evidence*

In his first point of error, appellant complains of the insufficiency of the evidence to sustain his conviction for possession of marihuana. Specifically, he argues that the State failed to prove that he *knowingly* exercised actual care, custody, control, or management over the substance. According to appellant, the hypothesis that appellant did not know of the presence of contraband is just as rational as the hypothesis that he knew of its presence; therefore, in appellant's view, the trier of fact could not have found each element of the offense beyond a reasonable doubt.

Citing *Geesa v. State,* 820 S.W.2d 154 (Tex. Crim.App.1991), appellant acknowledges that reversal of a conviction based on circumstantial evidence is no longer warranted simply because the circumstantial evidence fails to eliminate every innocent hypothesis (the "outstanding reasonable hypothesis test") which might be reasonably suggested. In spite of his recognition of the authority of *Geesa,* however, appellant continues to employ an analysis which advances the proposition that if there is another hypothesis just as rational or equally reasonable to the hypothesis of guilt, no rational trier of fact could find that guilt has been established beyond a reasonable doubt. Although couched in slightly different terms, appellant's analysis continues to be based on the "outstanding reasonable hypothesis test,"

which was rejected by the Texas Court of Criminal Appeals in 1991 in *Geesa* and again recently in *Brown v. State*, 911 S.W.2d 744 (Tex.Crim.App.1995).

■ Texas continues to follow the standard of review set out by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), for a legal sufficiency point of error. In reviewing the legal sufficiency of the evidence, whether in a direct or a circumstantial evidence case, we view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find each of the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim. App.1995).

■ To prove unlawful possession of a controlled substance, the State must prove that the accused (1) exercised actual care, custody, control, or management over the contraband; *See* TEX.HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1992); and (2) knew the substance he possessed was contraband. *King*, 895 S.W.2d at 703; *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App. 1988). These elements may be proved by circumstantial evidence. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985). According to the Texas Court of Criminal Appeals in *Brown, supra*, evidence which affirmatively links the accused to the contraband suffices for proof that he possessed it knowingly.

In its use of the phrase "affirmative links," the Court of Criminal Appeals in *Brown* emphasized that, rather than being a standard of review in its own right, the term is simply a shorthand expression of what must be proven to establish that a person possessed some kind of drug "knowingly or intentionally." Its use is not a return to the "outstanding reasonable hypothesis" test of *Humason v. State*, 728 S.W.2d 363, 367 (Tex. Crim.App.1987). On the contrary, it is used as a means of evaluating the sufficiency of the evidence according to the success with which the evidence proves such a link between the accused and the contraband. *See Brown, supra.* In an effort to resolve any

conflict among the courts of appeal over the relationship of the concept of "affirmative links" and the "outstanding reasonable hypothesis" test, the Court of Criminal Appeals in *Brown* stated that its earlier opinion in *Geesa, supra*, did not significantly compromise the "affirmative links" case law. In short, ". . . each defendant must still be affirmatively linked with the drugs he allegedly possessed, but this link need no longer be so strong it excludes every other outstanding reasonable hypothesis except the defendant's guilt." *Brown*, 911 S.W.2d at 748.

■ Appellant is correct when he argues that an accused's mere presence in the vicinity of contraband is not enough to establish that a defendant knowingly possessed the contraband. *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Crim.App.1981). Moreover, when the accused is not in exclusive possession of the place where contraband is found, it cannot be concluded that he had knowledge or control over the contraband unless there are additional independent facts and circumstances which affirmatively link him to the contraband. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex.App.—El Paso 1995, pet. ref'd.). Possession of contraband need not be exclusive, however, and evidence which shows that the accused jointly possessed the contraband with another is sufficient. *McGoldrick*, 682 S.W.2d at 578.

Contrary to appellant's assertions, the evidence in the instant case reveals several facts and circumstances which enabled the trier of fact to conclude that appellant knowingly possessed contraband. Although appellant was not the sole occupant of the vehicle, the marihuana was found in the trunk of a vehicle which appellant was driving. It is also true that Davis did not own the vehicle, but, nonetheless, he was driving the car and in control of it. The marihuana (20.5 pounds of it) was found in a bag inside a suitcase in the trunk of the car. Moreover, appellant had convenient access to the trunk; he had been in possession of the car on the trip from New York to Houston and was now on his way back to New York. Male, as well as female, clothing was scattered loose in the trunk,

rather than being in a suitcase. Finally, the amount of marihuana (20.5 pounds) is large enough to indicate that the accused knew of its presence. *See Menchaca*, 901 S.W.2d at 652.

Based upon our review of the record, we find the evidence is sufficient for a trier of fact to conclude beyond a reasonable doubt that Davis possessed marihuana by knowingly exercising actual care, custody, control, or management over it. Point of error one is overruled.

### *Point Of Error Two*

### *Fourth Amendment Issues*

In point of error two, appellant contends that the trial court erred in denying appellant's motion to suppress evidence obtained by an unlawful search. Appellant's objection on appeal to his own detention, as well as to the detention and search of the trunk of the car and the suitcase and bag found within it, is grounded in the Fourth Amendment and not in the Texas Constitution or Art. 38.23 of the Texas Code of Criminal Procedure.

### *Standard of Review*

■■■■■ In reviewing a decision on a motion to suppress, the appellate court must view the evidence in the light most favorable to the trial court's ruling. *Reyes v. State*, 899 S.W.2d 319, 322 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd.); *Winters v. State*, 897 S.W.2d 938, 940–941 (Tex.App.—Beaumont 1995, no pet.). Absent a clear showing of abuse of discretion, the trial court's finding should not be disturbed. *Meek v. State*, 790 S.W.2d 618, 620 (Tex. Crim.App.1990); *Reyes*, 899 S.W.2d at 322. The trial judge's decision in a motion to suppress must be upheld if any theory is supported by the record, even if the record does not reflect or indicate that the judge relied upon that theory. *Spence v. State*, 795 S.W.2d 743, 755 n. 11 (Tex.Crim.App.1990); *cert. denied* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991); *see Sewell v. State*, 629 S.W.2d 42, 45 (Tex.Crim.App.1982); *Billey v. State*, 895 S.W.2d 417, 423 (Tex.App.—Amarillo 1995, pet. ref'd.).

■■■■■ At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex. Crim.App.1996); *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990). The trial court may believe or disbelieve all or any part of a witness's testimony. *Id.* at 620. Furthermore, the trial judge is also the initial arbiter of the legal significance of the facts. *DuBose*, 915 S.W.2d at 496. The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. *Id.* Even if the court of appeals would have reached a different result, as long as the trial court's rulings are at least within the "zone of reasonable disagreement," the appellate court should not intercede. *Id.* at 496–497; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (Opinion on Rehearing).

### *Search and Seizure Issues*

■■■■■ When a defendant seeks to suppress evidence because of an illegal search and seizure that violates the Fourth Amendment to the United States Constitution, he bears the initial burden of rebutting the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App. 1986); *De La Paz v. State*, 901 S.W.2d 571, 575 (Tex.App.—El Paso 1995, pet. ref'd.). The defendant meets this burden by establishing that a search or seizure occurred without a warrant, as was true in the instant case. *State v. Hopper*, 842 S.W.2d 817, 819–820 (Tex.App.—El Paso 1992, no pet.). Once the defendant meets his initial burden of proof, the burden of proof shifts to the State to produce either evidence of a warrant or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *Id.* at 820.

■■■■■ An exception to the warrant requirement occurs when circumstances short of probable cause justify a temporary investigative detention, whether of a person or of the person's personal property. *See United*

788

*States v. Place,* 462 U.S. 696, 702, 705–706, 103 S.Ct. 2637, 2641–2642, 2643–2644, 77 L.Ed.2d 110 (1983). A routine traffic stop is a temporary investigative detention. *Campbell v. State,* 864 S.W.2d 223, 225 (Tex.App.— Waco 1993, pet. ref'd). It is a limited seizure which is analyzed under the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Shabazz,* 993 F.2d 431, 434 (5th Cir.1993).

In the instant case, the officers' initial investigative stop was proper; an officer may lawfully stop and detain a person for a traffic violation. *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Crim.App.1993). Here there was reasonable suspicion of a violation; the officers testified that appellant was weaving within the lane, which gave them reasonable suspicion to believe that he was driving while intoxicated or simply tired. In conjunction with the traffic stop, the officers requested information concerning Davis's driver's license, ownership of the vehicle, his destination, and the purpose of the trip; these were all proper inquiries. *See Shabazz,* 993 F.2d at 436–437.

Although appellant had a valid driver's license and no criminal record, the officers testified at trial to facts observed and interpreted by them at the traffic stop that night which gave rise to reasonable suspicion to believe that criminal activity was afoot.

1. Appellant was travelling late at night;
2. He did not own the vehicle; it was borrowed;
3. As soon as officers stopped him, he immediately got out of his car and came back to the patrol car. During most of the stop, appellant stood well away from his car as well as the patrol car and the videocamera which was running throughout the stop. The officers interpreted his conduct to mean that he was distancing himself from his car, as if to keep the officers away from it.
4. Appellant was "really nervous";
5. He was dressed poorly; his attire was not typical of the businessman that he claimed to be;
6. His story was inconsistent with that of his passenger.

After the preliminary questions and license checks, the officers asked Davis for consent to search the vehicle. Davis refused. At that point, they informed him that, although he was free to go, his vehicle would be detained long enough to call in the canine unit to perform a "dog sniff" on the car. As noted above, once the dog alerted twice on the car trunk, the police searched the trunk and its contents and discovered the contraband.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." *Place,* 462 U.S. at 700, 103 S.Ct. at 2641. A search or seizure without a warrant is, of course, per se unreasonable and, therefore, illegal under the Fourth Amendment. *Fancher v. State,* 659 S.W.2d 836, 839 (Tex.Crim.App.1983).

The Fourth Amendment prohibition against unreasonable seizures applies to searches and seizures not only of persons but also of personal property. *Place,* 462 U.S. at 700, 103 S.Ct. at 2640–2641. The personal property at issue in *Place* was luggage at an airport; in the instant case, the object seized and searched is a vehicle containing luggage and other items in the trunk. In *Place,* the Supreme Court held that those principles enunciated in *Terry* concerning temporary detentions of persons also apply to detentions of personal property. *Id.* at 702, 103 S.Ct. at 2641–2642. In other words, such seizures or temporary detentions of personal property do not require a showing of probable cause, but, instead, are permitted on the basis of the existence of reasonable, articulable suspicion, premised on objective facts, that the luggage (in the instant case the trunk of the car) contains contraband or evidence of a crime. *Id.* at 702, 103 S.Ct. at 2641–2642. To justify a temporary detention, an officer must possess specific articulable facts which amount to more than a mere hunch or suspicion that, combined with his personal experience and knowledge and any logical inferences, create a reasonable suspicion that criminal activity is afoot. *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989).

In the instant case, the initial stop was valid; it is what happened after the initial stop that is at issue. The ultimate question is whether the officers developed, during the time between the initial valid stop and the calling out of the canine unit reasonable suspicion sufficient to warrant detaining the vehicle and the passengers until the dog arrived and performed the sniff test on the trunk of the car. Based on our review of the entire record, including the facts testified to by the officers and their stated reasons for interpreting those facts as raising reasonable suspicion, this court is of the opinion that the officers had reasonable articulable suspicion to continue the detention. We give deference to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts. We conclude that the trial court's rulings are at least within the "zone of reasonable disagreement" described in *DuBose, supra.* In reaching that conclusion, we do not look at the facts recited by Officer Bivins in isolation; rather we consider the "totality of the circumstances—the whole picture." *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The fact that appellant was travelling late at night in a borrowed car, appeared nervous, was dressed poorly considering the explanation for travel given, told a story which could be interpreted as being inconsistent with that of his passenger, immediately got out of his vehicle when stopped and went back to the patrol car door, and repeatedly attempted to distance himself from his own vehicle, was enough to raise reasonable suspicion justifying further detention until the drug dogs came to the scene to sniff the car. Officer Bivins was able to point to the above-listed specific and articulable facts which, taken together with rational inferences from those facts, justify a reasonable and articulable suspicion that appellant was engaged in criminal activity.

Having reasonable suspicion to continue the detention, we conclude the officers made the decision at 1:06 a.m. to call out the canine unit. At 1:23 a.m. the canine unit arrived on the scene, and at 1:27 a.m. the dog first alerted on the car trunk. As revealed by the time markings on the videotape, the entire stop, including the initial encounter, the wait for the arrival of the canine unit, and the canine sniff on the vehicle, lasted twenty-nine minutes. According to the videotape, the time lapse between the decision to call out the canine unit and the dog's alert on the vehicle was twenty-one minutes. The twenty-one minute detention for the dog sniff was brief—certainly less than the ninety minutes which was held to be unreasonable in *Place,* 462 U.S. at 709–710, 103 S.Ct. at 2645–2646. As demonstrated by both the officers' testimony at trial and the videotape viewed by the judge at trial, the officers' investigation was pursued in a diligent and reasonable manner; the duration of the detention was sufficiently brief. Furthermore, by using the "dog sniff test," the officers employed a minimally intrusive method of investigation. *See United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

The officer's purpose in seizing appellant's vehicle was to run a narcotics dog around it and to subject the car to a sniff test. The question arises as to whether the dog sniff in and of itself constituted a search. If the sniff constituted a search, then probable cause, as opposed to reasonable suspicion, was required to justify the search; in that event, the continued detention of Davis's car for the purpose of subjecting it to a sniff test—no matter how brief—could not be justified on less than probable cause. *Place,* 462 U.S. at 706, 103 S.Ct. at 2644. The Supreme Court considered the "dog sniff" issue in *Place* and concluded that a dog sniff is not a search within the meaning of the Fourth Amendment. *Id.* at 707, 103 S.Ct. at 2644–2645. Since the dog sniff test is not violative of the Fourth Amendment, the fundamental issues in this case are whether the officers had reasonable suspicion to continue the detention, whether the detention was sufficiently temporary and minimally intrusive and lasted no longer than necessary to effectuate the purpose of the stop, and whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. *See Sharpe,* 470 U.S. at 675, 105 S.Ct. at 1569–1570; *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319,

1325–1326, 75 L.Ed.2d 229 (1983). In the instant case, all elements were met. As noted above, the officers had the requisite reasonable suspicion and were diligent in their pursuit of the investigation; furthermore, the method of investigation (dog sniff test) was minimally intrusive and of sufficiently short duration to be reasonable. Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion to suppress. The judgment of conviction is affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

The dissent of March 6, 1996 is withdrawn and the following substituted. I respectfully dissent. The majority holds certain facts gave rise to reasonable suspicion to believe that criminal activity was afoot. Even taking those facts as true, within the "totality of the circumstances" and viewing them in the light most favorable to the trial court's ruling, *see State v. Carter,* 915 S.W.2d 501 (Tex.Crim. App.1996), they are not, as a matter of law, specific articulable facts which created a reasonable suspicion that criminal activity was afoot.

Where events are as consistent with innocent activity as with criminal activity, detention based upon those events is unlawful. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex. Crim.App.1983). The suspicious conduct relied upon by the officers must be sufficiently distinguishable from that of innocent people under the same circumstance to clearly, if not conclusively, set the suspect apart from them. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991).

There is a tenuous balance between winning the war on drugs and preserving Fourth Amendment protections. We must not achieve the former by destroying the latter. We are a mobile society, heavily reliant upon the automobile and the highway system. While those automobiles and highways are often used to transport drugs, far more innocent activity occurs.

While recognizing the "totality of the circumstances" criteria, it is necessary to analyze each of the facts relied upon by the majority.

"*1. Appellant was travelling late at night;*"—"Late at night" is an extremely subjective characterization, especially in this era of all night television and 24 hour business establishments. The officers first noticed Davis at approximately 1:00 a.m. Late, early or neither?[1] Courts have held being on the roadway late at night or early in the morning is not indicative of criminal activity. *See Benton v. State,* 576 S.W.2d 374 (Tex.Crim. App.1978); *Scott v. State,* 549 S.W.2d 170 (Tex.Crim.App.1976).

"*2. He did not own the vehicle; it was borrowed;*"—Actually Officer Bivins testified it was his experience that a businessman usually rents a vehicle, if he does not own one, rather than borrow one. Consequently his focus was borrowed versus rented, rather than borrowed versus owned. In either event, the status of the vehicle is not probative. So long as the vehicle was not stolen, and the officers confirmed it was not, whether Davis owned it, rented it or borrowed it is of no consequence *vis a vis* criminal activity.

"*3. As soon as officers stopped him, he immediately got out of his car and came back to the patrol car. During most of the stop, appellant stood well away from his car as well as the patrol car and the videocamera which was running throughout the stop. The officers interpreted his conduct to mean that he was distancing himself from his car, as if to keep the officers away from it;*"—Officer Bivins testified Davis exited his vehicle and "met me at my door as I was getting out of the patrol unit." Bivins asked Davis if he had been drinking. Davis stated he had not, but was tired. Bivins then, "for officer's safety reasons", left Davis at the patrol car and went to Davis' vehicle to talk with the passenger. He stated he "just really talked with her basically to take a safe look to make sure there wasn't anything in the car." Bivins did not expand on his reasoning other than to reiterate his conclusion that Davis did not want the officers "to be up near his

---

1. "I say tomato (toe-may-toe); You say tomato (toe-mah-toe)." IRA GERSHWIN, *Let's Call the Whole Thing Off,* from SHALL WE DANCE, (RKO 1937).

car". The facts of the evening belie Bivins' conclusion. Davis' action actually drew Bivins *to* the vehicle rather than *away* from it. Davis' actions have many innocent interpretations. He may have wanted to show the officers he posed no threat to their safety. He may have wanted to demonstrate he was not intoxicated, by allowing them to view his walk, his eyes, his speech, etc. He may have been wanting to "make points" by coming to the authority figures rather than forcing them to come to him.

"*4. Appellant was 'really nervous';*"—Nervousness, when suddenly confronted by a police officer who asks questions, is as indicative of innocence as of guilt. Many people react nervously to being approached by police. *Daniels v. State,* 718 S.W.2d 702, 707 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds by Juarez v. State,* 758 S.W.2d 772 (Tex.Crim.App.1988). It is not indicative of guilt for a person to be nervous. *Montano v. State,* 843 S.W.2d 579, 582 (Tex.Crim.App.1992).

"*5. He was dressed poorly; his attire was not typical of the businessman that he claimed to be;*"—The videotape shows Davis is wearing jeans, tennis shoes and a Dallas Cowboys T-shirt. Apparently Bivins believes businessmen who invest in real estate should maintain a certain standard in travel clothing. Perhaps he wanted Davis to drive from Houston to New York in a suit and tie. One case which noted a defendant's dress was *Baker v. State,* 478 S.W.2d 445, 449 (Tex.Crim.App.1972)[2]. The court noted the fact that Baker was barefooted, had long hair, and was shabbily dressed did not furnish the state with a valid "stop and frisk" situation. Nor should Davis' dress or lack of it be a factor creating reasonable suspicion of criminal activity in this case.

"*6. His story was inconsistent with that of his passenger.*"—When Bivins initially approached the passenger, he questioned her. She told him her name, she was from New York, they were coming to Houston and she was merely riding with Davis. Bivins went back to Davis and asked him basically the same questions. Davis said he was from New York and had been to Houston to look at some apartment buildings for possible investment. On direct examination, Bivins testified Davis said he had hired the passenger to help assess the property. However, on cross-examination, Bivins admitted Davis never said the passenger was "hired", but that she was just along for the trip. If this is the inconsistent statements the majority uses, I fail to find any inconsistency.[3] Assuming there is some inconsistency, it certainly is insignificant. It points out the purported dilemma; if two people tell the same *exact* story, it is suspicious because the stories are "too pat"; if two people tell slightly different stories, it is suspicious because there are "inconsistencies". But in fact, there is no dilemma because neither scenario is necessarily suspicious.

Although the majority does not rely upon the out-of-state vehicle as a factor, Officer Bivins did. In *Faulkner v. State,* 549 S.W.2d 1 (Tex.Crim.App.1976) the court noted that "out-of-county tags" were not evidence of wrongdoing and did not justify a temporary detention. In a concurring opinion on state's motion for rehearing, Judge Phillips stated: "If classified according to a numerical scale of probative evidence of suspicious conduct or circumstances, the fact that an automobile operated on a public street bears an out of county license plate would rate a zero." *Id.* at 4.

These facts, separately or collectively, fail to create a reasonable suspicion that, specifically, marijuana was in the vehicle or, generally, any criminal activity was occurring. The facts provide the basis for Officer Bivins' "hunch" that something was in the vehicle. A telling point in the hearing was when Bivins recounted his comments to the drug dog handler. When asked the question: "Then you made this statement: 'All we can do is go around it; if we're lucky we'll hit and we'll go in and look.' "; Bivins replied "That's correct". The Fourth Amendment, in my

---

2. This case held the Texas vagrancy statute unconstitutional.

3. The audio portion of the video tape captured the passenger telling Officer Weatherford a story *consistent* with Davis' account.

view, protects late-night, out-of-state travelers from being subjected to detentions that provide officers the opportunity to "get lucky".

Once Officer Bivins had determined Davis was not intoxicated nor had he committed any other violations, the detention of him and his vehicle was improper. The motion to suppress should have been granted. Consequently, I would reverse and remand.