WALKER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-336-CR

PAUL JOHN WALKER, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

A jury convicted Appellant Paul John Walker, Jr., of driving while intoxicated, and the trial court sentenced him to 120 days’ confinement, suspended for twenty months, and an $800 fine.  In three points, Appellant contends that:  (1) 
the trial court abused its discretion in denying his motion to suppress because 
the traffic stop violated article 1, section 9 of the Texas Constitution and the Fourth Amendment of the United States Constitution; (2) the trial court reversibly erred in admitting his blood test results, violating Texas Rule of Evidence 403; and (3) the trial court reversibly erred in admitting his blood test results without the requested jury instruction, violating Texas Rule of Evidence 105(a).  In one cross point, the State contends that the trial court erred in denying its request to include the per se definition of intoxication in the jury charge.  We affirm.

II. Factual and Procedural Background

On January 30, 2004, Appellant filed a motion to suppress all evidence and testimony obtained directly or indirectly by any law enforcement officers regarding a blood test to which Appellant consented after his arrest for DWI.  Appellant based his motion on the contention that the evidence was seized without a warrant in violation of the federal and state constitutions as well as various statutes.  Subsequently, on February 5, 2004, Appellant filed a supplemental motion seeking to suppress, among other things, all evidence directly or indirectly obtained as a result of the traffic stop and subsequent arrest on the basis that the traffic stop was made without a warrant, probable cause, or reasonable suspicion under the federal and state constitutions.  The trial court conducted a hearing on February 17, 2004.  

The State called Trooper Michael Windham as one of two witnesses.  Trooper Windham testified that he was sitting in a patrol car on the shoulder of U.S. 377 when he noticed Appellant’s Suburban approaching from behind.  Trooper Windham stated that he observed the Suburban cross the white shoulder line as it approached the patrol car and then swerve and cross the center yellow lines as it passed the patrol car.  He decided to follow Appellant and at that point activated his video camera.  Trooper Windham stated that he noticed that Appellant’s driving improved, yet he continued to weave within his own lane; therefore, Trooper Windham stopped him.  

Trooper Windham testified that when he approached Appellant’s window, he detected the smell of alcohol and noticed that Appellant’s eyes were bloodshot.  He asked Appellant if he had been drinking, and
 Appellant responded that he had had four gins at the Palms Restaurant in Dallas.  Trooper Windham then gave Appellant a written warning for failing to drive in a single lane and asked him to step behind his Suburban to perform several field sobriety tests.  Appellant performed the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand.  Trooper Windham testified that Appellant performed poorly on all three of the tests; therefore, Trooper Windham arrested him. 

Trooper Windham stated that after he had taken Appellant to the sheriff’s office, he asked Appellant to submit to a breath test.  Trooper Windham testified that Appellant refused and instead asked for a blood test.  The State called Deborah Wolf, an emergency medical technician, level paramedic, and certified phlebotomist, who testified that she drew a sample of Appellant’s blood to be sent for analysis. 

At the conclusion of the hearing, the trial court granted Appellant’s motion to suppress his refusal of the breath test and all statements Appellant made after his arrest in response to custodial interrogation
; however, the trial court denied the motion as to the blood test and any evidence regarding the stop and subsequent arrest.  The trial court made findings of fact and conclusions of law.  In its findings of fact, the trial court found in pertinent part that “Trooper Windham observed the defendant’s vehicle driving on the improved shoulder while approaching Trooper Windham’s vehicle” and that “Trooper Windham observed the defendant’s vehicle cross the center lines multiple times in what Trooper Windham believed to be an unsafe lane change or failure to maintain a single lane.”  In its conclusions of law, the trial court held in pertinent part that “based on the totality of the circumstances . . . Trooper Windham had reasonable suspicion to stop the Defendant’s vehicle and was permitted to make a temporary investigative detention of the defendant and probable cause to arrest the Defendant . . . for . . . Driving While Intoxicated.”  

III. Legality of the Stop

In his first point, Appellant contends that the trial court abused its discretion in denying his motion to suppress because the traffic stop violated article 1, section 9 of the Texas Constitution and the Fourth Amendment of the United States Constitution.  More specifically, Appellant argues that because Trooper Windham believed that failure to drive in a single lane was a traffic violation, he needed to have probable cause for the stop, and he did not.  In the alternative, Appellant claims that if Trooper Windham did not need probable cause for the stop, he at least needed reasonable suspicion, which he also lacked here.  

Appellant does not distinguish between his rights under the Texas Constitution and the United States Constitution.  
Therefore, we will address only whether the trial court’s denial of his motion to suppress violated his rights under the United States Constitution. 
See, e.g., Dewberry v. State
, 4 S.W.3d 735, 743-44 (Tex. Crim. App. 1999) (addressing only whether defendant’s rights under the United States Constitution were violated because defendant failed to distinguish his rights under the Texas Constitution from those under the federal constitution and combined all four points into one argument), 
cert. denied
, 529 U.S. 1131 (2000); 
Hale v. State
, 139 S.W.3d 418, 421 (Tex. App.—Fort Worth 2004, no pet.) (analyzing defendant’s contention under the United States Constitution only because defendant did not point out any distinction between his rights to confrontation under the United States Constitution and the Texas Constitution); 
see also Heitman v. State
, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991).

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)
.  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Guzman
, 955 S.W.2d at 89; 
 
Best
, 118 S.W.3d at 861-62.  However, when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Ford v. State
, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005);
 Johnson
, 68 S.W.3d at 652-53.  

When the sole witness at the motion to suppress hearing is the arresting officer and the trial court files findings of fact and conclusions of law, the only question before us is whether the trial court properly applied the law to the facts it found.
(footnote: 2)  
State v. Ballman
, 157 S.W.3d 65, 69 (Tex. App.—Fort Worth 2004, pet. ref’d) (citing 
Carmouche
, 10 S.W.3d at 327-28); 
Guzman
, 955 S.W.2d at 86-87, 89; 
James v. State
, 102 S.W.3d 162, 169-79 (Tex. App.—Fort Worth 2003, pet. ref’d)).  Because the trial court entered findings of fact and conclusions of law and because those findings make clear that the trial court accepted virtually all of Trooper Windham’s testimony, we must give that court almost total deference in reviewing those historical facts found but review de novo the application of the law to those facts.  
See Ross
, 32 S.W.3d at 856-58; 
Ballman
, 157 S.W.3d at 69.

While a police officer must have probable cause for a full custodial arrest, a mere stop of an individual for the purposes of investigation does not require such substantial justification.  
Terry v. Ohio
, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-80 (1968)
.  Because a temporary detention is considered a lesser intrusion than a custodial arrest, a police officer may stop an individual if the officer has a reasonable suspicion that the person is engaged in criminal activity.  
Id
. at 22; 88 S. Ct. at 1880; 
Woods v. State
, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997).
  The officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation.  
Terry
, 392 U.S. at 21, 88 S. Ct. at 1880; 
Davis v. State
, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)
.  

In support of his contention that the issue is one of probable cause rather than reasonable suspicion, Appellant relies on 
State v. Rivenburgh
, 933 S.W.2d 698 (Tex. App.—San Antonio 1996, no writ); however, 
Rivenburgh
 is distinguishable from the case before us.  In 
Rivenburgh
, Officer Morales testified that he stopped Rivenburgh for the offense of disorderly conduct after he saw her make a vulgar gesture with her middle finger and mouth an obscenity in her rearview mirror.  
Id
. at 700.  However, Officer Morales subsequently arrested Rivenburgh for driving while intoxicated.  
Id
.  Rivenburgh moved to suppress all evidence seized as a result of her arrest, contending that the stop was conducted without a valid search warrant, probable cause, or reasonable suspicion in violation of her constitutional rights.  
Id
.  The trial court granted her motion.  
Id
.  On appeal, the State argued that the issue was whether Officer Morales had reasonable suspicion to stop Rivenburgh to investigate.  
Id
.  The appellate court disagreed, stating that the issue was whether Officer Morales had probable cause to arrest Rivenburgh without a warrant.  
Id
.  The court reasoned that because Officer Morales testified that he stopped Rivenburgh for the offense of disorderly conduct, at the time of the stop, the offense had either occurred or it had not—nothing was left for Officer Morales to investigate.  
Id
.  In the case before us, however, Trooper Windham testified that he observed Appellant cross onto the shoulder of the highway as he approached the parked patrol car from behind and then swerve and cross the center yellow lines as he passed the patrol car.  Trooper Windham further testified that he decided to follow Appellant and record Appellant’s driving because of the traffic violation 
and
 because Appellant might be driving while intoxicated, falling asleep, or experiencing a medical problem.  As he followed Appellant, Trooper Windham noticed that Appellant’s driving improved, yet he continued to weave within his own lane.  Therefore, Trooper Windham decided to pull Appellant over for failing to drive in a single lane 
and 
to see if he was intoxicated.  Unlike Officer Morales in 
Rivenburgh
, Trooper Windham had further investigating to do.  
See McClain v. State
, No. 05-03-01785-CR, 2005 WL 225258, at *5 (Tex.  App.—Dallas Feb. 1, 2005, pet. ref’d) (not designated for publication) (distinguishing 
Rivenburgh 
and holding issue was one of reasonable suspicion rather than probable cause when the officer decided to pull the appellant over for failing to drive in a single lane 
and
 to see if he was intoxicated).

The reasonable suspicion determination is based on the totality of the circumstances.  
United States v. Sokolow
, 490 U.S.1, 8-9, 109 S. Ct. 1581, 1585-86 (1989); 
Woods
, 956 S.W.2d at 38.
  Although an officer may lawfully stop and detain a person for a traffic violation, no requirement exists that a particular traffic regulation has been or is about to be violated for an officer to have reasonable suspicion sufficient to justify a stop of a vehicle.  
Fox v. State
, 900 S.W.2d 345, 347 (Tex. App.—Fort Worth 1995), 
pet. dism’d as improvidently granted
, 930 S.W.2d 607 (Tex. Crim. App. 1996); 
Gajewski v. State
, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th
 Dist.] 1997, no pet.)
.  Erratic or unsafe driving may furnish a sufficient basis for a reasonable suspicion that the driver is intoxicated even absent evidence of violation of a specific traffic law.  
See Cook v. State
, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th
 Dist.] 2002, pet. ref’d) (holding that while the appellant’s driving may not have constituted a traffic violation, it did provide reasonable suspicion that the appellant was driving while intoxicated); 
McQuarters v. State
, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref’d) (finding that even if the officer’s testimony failed to establish reasonable suspicion that the appellant violated a traffic law, it did raise sufficient facts to justify a stop based on reasonable suspicion that the appellant was intoxicated); 
Gajewski
, 944 S.W.2d at 453 (finding that although the appellant’s driving may not have constituted a traffic violation, that did not negate a stop based on reasonable suspicion that the appellant was intoxicated); 
Fox
, 900 S.W.2d at 347 (holding driver’s conduct sufficient to justify stop based upon reasonable suspicion that something out of the ordinary was occurring even though no single act was illegal).

As previously stated, Trooper Windham testified that he believed Appellant might be intoxicated based on his initial observation of Appellant driving onto the shoulder of the highway and then crossing the center yellow lines of the road.  Trooper Windham’s suspicion of Appellant’s intoxication remained when Appellant continued weaving after Trooper Windham began to follow him. 
 
Therefore, based on the totality of the circumstances, we conclude that Trooper Windham had specific articulable facts, which taken together with rational inferences from those facts, justified his reasonable suspicion that Appellant was driving while intoxicated.  
See Held v. State
, 948 S.W.2d 45, 47, 51 (Tex. App.—Houston [14th
 Dist.] 1997, pet. ref’d) (holding officer’s observation of the appellant’s vehicle weaving randomly in and out of three lanes of traffic sufficient to give rise to a reasonable suspicion that the appellant may have been intoxicated); 
Davis v. State
, 923 S.W.2d 781, 788 (Tex. App.—Beaumont 1996) (holding stop proper where officer testified he suspected driver was intoxicated or tired based on weaving within lane), 
rev’d on other grounds
, 947 S.W.2d 240 (Tex. Crim. App. 1997); 
Fox
, 900 S.W.2d at 347 (holding officer’s observation of the appellant’s vehicle speed fluctuating between 40 and 55 m.p.h. and weaving within his own lane provided sufficient specific facts to create a reasonable suspicion that some activity out of the ordinary was occurring or had occurred); 
see also State v. Arend
, No. 2-03-336-CR, 2005 WL 994710, at *5 (Tex. App.—Fort Worth Apr. 28, 2005, pet. ref’d) (mem. op.) (not designated for publication) (holding officer’s observation of the appellee’s vehicle weaving within his own lane and its continued weaving as the officer followed the appellee for approximately forty-five to fifty seconds provided specific articulable facts to justify officer’s reasonable suspicion that the appellee was driving while intoxicated).

Appellant relies on 
State v. Tarvin
, 972 S.W.2d 910 (Tex. App.—Waco 1998, pet. ref’d), 
State v. Cerny
, 28 S.W.3d 796 (Tex. App.—Corpus Christi 2000, no pet.), and 
Corbin v. State
,
 85 S.W.3d 272 (Tex. Crim. App. 2002), to support his position that Trooper Windham did not have reasonable suspicion to justify the stop.  These cases are distinguishable.  In 
Tarvin
, the court held that Tarvin’s weaving within his own lane of traffic did not provide a reasonable suspicion of criminal activity.  
Tarvin
, 972 S.W.2d at 912.  However, the court also noted that the officer who stopped Tarvin never testified that he was conducting an investigatory stop, nor did he testify to suspecting any criminal activity other than weaving out of the lane.  
Id
.  Moreover, the court stated, “[M]ere weaving in one’s own land of traffic can justify an investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity. . . .”  
Id
.  Similarly, in 
Cerny
, the court held that Cerny’s weaving somewhat within his own lane of traffic did not support a finding that the officer had a reasonable belief that Cerny violated section 545.060 of the transportation code.
(footnote: 3)  
Cerny
, 28 S.W.3d at 801.
 
 However, the court also noted that the officer did not articulate any other justification for the stop.  
Id
.  Here, Trooper Windham testified that one of the reasons for the stop was that he believed Appellant might be intoxicated.  

Finally, in 
Corbin
, the court of criminal appeals held that the officer’s stop based on the exercise of his community caretaking function was unreasonable.  
Corbin
, 85 S.W.3d at 278.  The officer’s belief that the appellant was in need of assistance was unreasonable based only upon appellant’s crossing over the side stripe for only twenty feet and then continuing to drive normally.  
Id
.  In the case before us, however, the State does not argue that Trooper Windham’s community caretaking function was a basis for the stop of Appellant’s vehicle; rather, the State contends that the trooper had reasonable suspicion that Appellant was driving while intoxicated. Therefore, we hold that the trial court properly denied Appellant’s motion to suppress for lack of reasonable suspicion.  We overrule Appellant’s first point.

IV. Admission of Blood Test Results

In his second point, Appellant contends that 
the trial court reversibly erred in admitting his blood test results, violating Texas Rule of Evidence 403, and in his third point, Appellant argues that the trial court reversibly erred in denying his request for a jury instruction to accompany the admission of his blood test results, violating Texas Rule of Evidence 105(a). 

Preservation of error is a systemic requirement that this court should review on its own motion.  
Martinez v. State
, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); 
Hughes v. State
, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993) (op. on reh’g), 
cert. denied
, 511 U.S. 1152 (1994).
  
An objection must be made as soon as the basis for the objection becomes apparent.  
Tex. R. Evid.
 103(a)(1); 
Lagrone v. State
, 942 S.W.2d 602, 618 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997); 
Polk v. State
, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987).  An early objection is just as fatal as a late one.  
See Johnson v. State
, 977 S.W.2d 725, 728 (Tex. App.—Fort Worth 1998, pet. ref’d) (op. on reh’g) (citing Hon. Charles F. Campbell & William P. Green, 
Guidelines for Preserving Error or How Not to Drop the Ball
, 54 
Tex. B.J. 
1178, 1180 (1991)).  To preserve error, a party must continue to object each time the objectionable evidence is offered.  
Fuentes v. State
, 991 S.W.2d 267, 273 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999); 
Ethington v. State
, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991).  A trial court’s erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.  
Leday v. State
, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); 
Johnson v. State
, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1259 (1991), 
overruled on other grounds by Heitman
, 815 S.W.2d at 681.  Furthermore, when evidence, which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose, is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; however, 
in the absence of a timely request, “the court’s action in admitting such evidence without limitation shall not be a ground for complaint on appeal.”  
Tex. R. Evid.
 105(a)
; 
Hammock v. State
, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001). 

  
 
When Appellant’s blood draw kit, State’s Exhibit 6, was offered into evidence, Appellant objected, arguing among other things that its admission violated Rule 403 and, alternatively, that a limiting instruction should be given along with its admission.  However, when State’s Exhibit 7, the DPS crime lab report actually containing the evidence of Appellant’s blood test results, was subsequently admitted into evidence, Appellant did not object on Rule 403 grounds nor did he request a jury instruction.  Therefore, we hold that Appellant forfeited his arguments, and 
we overrule Appellant’s second and third points.

V. 
Conclusion

Because we have overruled Appellant’s three points, we need not address the State’s cross point.
(footnote: 4)  We affirm the trial court’s judgment.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  February 16, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
As previously stated, Deborah Wolf, an emergency medical technician, level paramedic, and certified phlebotomist, also testified at the motion to suppress hearing; however, her testimony was limited to her participation in drawing a sample of Appellant’s blood for analysis.  Trooper Windham, the arresting officer, was the only witness to testify at the motion to suppress hearing regarding the reasonable suspicion issue. 

3:
Section 545.060(a) of the transportation code provides:  “(a) An operator on a roadway divided into two or more clearly marked lanes for traffic:  (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely.”  
Tex. Transp. Code Ann.
 § 545.060(a) (Vernon 1999
).

4:
See 
Tex. R. App. P.
 47.1.