The STATE of Texas, Appellant,

v.

Rodney Dee ROSS, Appellee.

No. 14–98–00680–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 22, 1999.

Travis J. Koehn, Daniel W. Leedy, Laura Gonzalez, Bellville, for appellants.

Conrad Day, Bellville, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## OPINION

RICHARD H. EDELMAN, Justice.

The State of Texas appeals an order suppressing all of the evidence surrounding the arrest of Rodney Dee Ross on the grounds that: (1) probable cause existed to arrest Ross; (2) the arresting officer was acting under his community caretaking function in detaining Ross; and (3) reasonable suspicion existed for Ross's detention. We affirm.

## Background

According to the uncontroverted evidence in this case, around 12:50 a.m. on November 1, 1997, Texas Alcoholic Beverage Commission ("TABC") agents arrived at a bar in Austin County, to conduct a routine inspection. As the agents were leaving, they noticed two children, who appeared to be under the age of fifteen, sleeping in the cab of a pickup truck parked in front of the bar. One of the TABC agents went back inside the bar to locate the owner of the pickup truck. The agent returned with Ross, who confirmed that the children and the truck were his. After observing signs of intoxication and hearing Ross say that he planned to drive the children home himself, the agents arrested Ross for public intoxication. Ross filed a motion to suppress all of the evidence surrounding his arrest due to lack of probable cause. The trial court granted the motion to suppress without entering findings of fact or conclusions of law.

## Standard of Review

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim.App.1999). The trial court may thus believe or disbelieve any or all of the witnesses' testimony. *See Johnson v. State,* 871 S.W.2d 744, 748 (Tex.Crim.App.1994). As the trier of fact, the trial court may disbelieve testimony even if the testimony is uncontroverted. *See, e.g., Mattias v. State,* 731 S.W.2d 936, 940 (Tex.Crim.App. 1987); *Kirkwood v. State,* 488 S.W.2d 824, 826 (Tex.Crim.App.1973).

In reviewing decisions on motions to suppress, we afford almost total deference to trial courts' determinations of historical facts that the record supports and their rulings on application of law to fact questions, also known as mixed questions of law, when those fact findings and rulings are based on an evaluation of credibility and demeanor. *See Loserth v. State,* 963 S.W.2d 770, 772 (Tex.Crim.App.1998). Mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor are reviewed *de novo. See id.*

Whether a defendant was "detained" within the meaning of the Fourth Amendment is a mixed question of law and fact which does not turn on an evaluation of credibility and demeanor. *See Hunter v. State,* 955 S.W.2d 102, 105 n. 4 (Tex. Crim.App.1997). Similarly, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). In reviewing a trial court's decision on suppression, we view the evidence in the light most favorable to the trial court's ruling. *See Ballard,* 987 S.W.2d at 891.

Where the State's evidence is uncontroverted, *i.e.,* appellant has neither presented conflicting testimony nor contradicted the State's evidence in any way, the

case does not turn on an evaluation of credibility and demeanor because the trial court does not have to decide which conflicting testimony deserves more weight. *See Maestas v. State,* 987 S.W.2d 59, 62 n. 8 (Tex.Crim.App.1999). Such a case presents an application of law to fact question which is to be reviewed *de novo. See id.* at 62.

In this case, although the State's evidence was uncontroverted, the trial court granted the motion to suppress without making any written findings of fact. As applied to such a case, the foregoing law regarding the standard of review can produce contradictory results. On the one hand, the fact that the State's evidence was uncontroverted would indicate that we merely review *de novo* whether the law was correctly applied to the facts and, if not, reverse the trial court's decision. *See id.* On the other hand, because the trial court, as trier of fact, had discretion to grant the motion to suppress if it merely disbelieved any material portion of the uncontroverted testimony, we are not at liberty to overturn its decision even if a *de novo* review would lead to the conclusion that, based on the uncontroverted evidence, the motion to suppress should have been denied. *See, e.g., State v. Davis,* 988 S.W.2d 466, 467 (Tex.App.—Houston [1 st Dist.] 1999, no pet.).

### Initial Questioning and Detention

■ The State first argues that the trial court erred in suppressing the evidence because the TABC agents were justified in initially questioning Ross without a warrant pursuant to their community caretaking function, *i.e.,* their need to assess the safety of the two children left alone in a pickup truck outside a bar late at night. The State further contends that it was

error to grant the motion to suppress because the agents had reasonable suspicion to detain Ross for endangering a child. The State argues that the two young children sleeping alone in a truck, outside a bar, late on a cold night, and without adult supervision, gave the agents reason to be concerned for the well-being of the children.

■ A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen. *See Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Hunter v. State,* 955 S.W.2d 102, 104 (Tex.Crim.App.1997). Such encounters are consensual as long as a reasonable person would feel free to disregard the police and go about his business. *See Bostick,* 501 U.S. at 434, 111 S.Ct. 2382; *Hunter,* 955 S.W.2d at 104. Therefore, the officers in this case were free to merely question Ross and needed no justification for doing so until the evidence showed that the encounter amounted to a detention. The record contains no evidence as to what occurred between Ross and the agent inside the bar. Therefore, any ruling could only have been based on what transpired when Ross spoke to the agents outside the bar.

■ Normally, an investigative detention is not permissible unless the circumstances on which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *See, e.g., Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995).[1] The Texas Court of Criminal Appeals has not formally recognized a community caretaking exception to the reasonable suspicion requirement, and Texas courts of appeals have differed on whether to recognize it.[2] However, the Texas Court

---

1. In determining whether reasonable suspicion exists, the detention is examined in terms of the totality of the circumstances based on the specific articulable facts relied upon by the detaining officer as well as rational inferences from those facts. *See Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997).

2. *Compare Ortega v. State,* 974 S.W.2d 361, 364 (Tex.App.-San Antonio, 1998, pet ref'd) (upholding stop based on community caretak-

of Criminal Appeals recently addressed "whether Article I, Section 9 of the Texas Constitution was violated by the officers' detaining the appellant without a warrant to determine if he needed first aid, a seizure which the officers made in performance of a community care-taking function, unrelated to the detection or investigation of crime." *See Hulit v. State,* 982 S.W.2d 431, 434 (Tex.Crim.App.1998). The Court noted that a search or seizure that is otherwise reasonable will not be found to be in violation of Article I, Section 9 merely because it was not authorized by a warrant. *See id.* at 436. It concluded:

> We find that the police officers acted reasonably when they approached the vehicle in which the appellant was slumped unconscious on a public highway, awakened the appellant, and asked him to step out so they could see if he was in need of assistance. We hold that Article I, Section 9 of the Texas Constitution was not violated by their actions. We do this, not by finding that there is a community care-taking exception to a warrant requirement, but by asking whether, from the totality of the circumstances, after considering the public and private interests that are at stake, their action was an unreasonable seizure. It was not.

*See id.* at 438. Therefore, despite declining to call it a community caretaking exception, *Hulit* nevertheless justified a stop based on a possible need for *assistance* rather than on suspicion of criminal activity.

In this case, TABC Agent Darryl Darnell was the only person to testify at the hearing on the motion to suppress. Darnell testified that he saw two preteens asleep in the front of a pickup truck outside the bar around 12:50 a.m. Darnell described the night as fairly cold and stated that the children had no kind of covering or anything over them. After observing that no adults were around and thinking that a number of bad things could happen to the children, such as somebody breaking a window and kidnaping them, Darnell sent the other agent into the bar to see if the owner of the vehicle could be located. The record does · not indicate what was said between the agent and Ross inside the bar, but Darnell testified that when Ross came outside, he stated that he was the owner of the vehicle, and that the children asleep in it were his.

Assuming the questioning of Ross outside the bar amounted to a seizure, we believe that the officers' actions in doing so to determine whether the safety of the children in the truck was threatened was reasonable under the rationale of *Hulit.* We also believe that the presence of the children in the truck under the circumstances described by Darnell objectively supported a reasonable suspicion of abandoning or endangering a child[3] such that a temporary detention of Ross to investigate further was justified. Therefore, we do not believe that the motion to suppress could have properly been granted for lack of justification to detain Ross.

### Arrest

 The State further argues that the trial court abused its discretion in

---

ing function); *Cunningham v. State,* 966 S.W.2d 811, 813 (Tex.App.-Beaumont 1998, no pet.); *and McDonald v. State,* 759 S.W.2d 784, 785 (Tex.App.-Fort Worth 1988, no pet.);*with Wright v. State,* 959 S.W.2d 355, 358 (Tex.App.-Austin 1998, pet. granted) (rejecting stop based on community caretaking function); *and Rheinlander v. State,* 888 S.W.2d 917, 919 (Tex.App.-Austin 1994), *pet. dism'd permanently abated,* 918 S.W.2d 527 (Tex.Crim.App.1996).

**3.** *See* TEX. PEN CODE ANN. § 22.041(b) (Vernon Supp.1998) (a person commits the offense of abandoning or endangering a child if while having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm).

granting the motion to suppress because there was probable cause to arrest Ross for public intoxication. The State contends that because Ross showed signs of intoxication and posed a threat to his children's safety, an arrest for public intoxication was justified.[4]

Darnell testified that if Ross had refused to come out of the bar for questioning, he "would probably have been arrested" for endangering a child.' Darnell stated that once he began to question Ross, he noticed that Ross spoke with a thick tongue and had to hold onto things around him in order to support himself. Ross's eyes were also very bloodshot, and he had a strong odor of an alcoholic beverage on his breath. After Darnell asked Ross how he and his children were going to get home, Ross replied that he was going to drive the children home himself. Upon making this statement, Ross was arrested for public intoxication.

Darnell's testimony does not establish that Ross was arrested before he stated that he planned to drive himself and his children home. Although Darnell stated that Ross was not free to leave while he was being questioned, this fact shows only that Ross was being detained and not that he had then been arrested. Similarly, Darnell's speculation that Ross *would probably have been* arrested *if* he had refused questioning, reflects, if anything, only that he had not yet been arrested. Because Ross did not refuse to talk to the officers, no arrest for doing so ever came about.

 As to the existence of probable cause for Ross's eventual arrest for public intoxication, we must determine whether the officer's knowledge at the time and under the circumstances would warrant a prudent person's belief that appellant had committed or was committing an offense. *See Banda v. State*, 890 S.W.2d 42, 52 (Tex.Crim.App.1994), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). An individual commits the offense of public intoxication if he appears in a public place under the influence of alcohol or any other substance to the degree that the individual may endanger himself or another. *See* TEX. PEN.CODE ANN. § 49.02(a) (Vernon Supp.1998); *Banda*, 890 S.W.2d at 52.

In this case, Darnell's description of Ross's speech, physical condition, and odor were sufficient to warrant a reasonable belief that appellant was intoxicated. In addition, Darnell's testimony that Ross stated he was *going to drive the children home himself* in that condition warranted a reasonable belief that he was likely to endanger himself and his children by doing so. Therefore, the evidence established that the officers had probable cause to arrest Ross for public intoxication after Ross made that statement.

 This case provides an example of how the seemingly contradictory precedent on the standard of review can produce conflicting determinations. On the one hand, a *de novo* review of this case based on the State's uncontroverted evidence leads to the conclusion that granting the motion to suppress could only have resulted from misapplying the law to the facts. On the other hand, if the trial court did not believe any material portions of the State's evidence, such as whether Ross actually

---

4. Ross also argues that he was arrested by the officers inside the bar, at which time the officers did not have probable cause to arrest him for public intoxication. As a movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. *See Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim.App.1986). A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant. *See id.* If the defendant does so and the State cannot prove that a warrant existed, it must prove the reasonableness of the arrest or seizure. *See id.* In this case, the record contains no evidence of what transpired inside the bar between the agent and Ross. Because Ross thus did not establish that any arrest occurred inside the bar, the State had no burden to prove that probable cause existed for any such arrest at that time.

exhibited signs of intoxication, it had discretion to grant the motion on that basis.

In seeking to resolve this apparent conflict, the fundamental importance of the trier of fact's discretion to evaluate credibility and demeanor and to believe or disbelieve any witness's testimony, even if uncontroverted, persuades us that case law describing when a case turns on an evaluation of credibility and demeanor should not be interpreted to infringe on that discretion. Accordingly, we conclude that it was within the trial court's discretion to grant the motion to suppress, and we affirm the judgment of the trial court.