The STATE of Texas, Appellant,

v.

Florentino ARRIAGA, Appellee.

No. 04-98-00901-CR.

Court of Appeals of Texas,
San Antonio.

Sept. 29, 1999.

Barbara Hervey, Asst. Crim. Dist. Atty., San Antonio, for Appellant.

Alan Brown, Law Offices of Brown & Norton, San Antonio, James Scott Sullivan, San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

The State appeals the trial court's order granting a motion to suppress intoxication evidence obtained from a DWI arrest. We affirm the order of the trial court because the arresting officer failed to present specific articulable facts to justify the stop.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 1997, Officer Mark Harris stopped appellee Arriaga on Grissom Road at 1:50 a.m. near a nightclub. Harris observed Arriaga's van drifting toward the divider line and then jerking back within the lane. Harris stopped Arriaga a mile and a half after he observed Arriaga's van drifting. Upon further investigation, Harris noticed the smell of alcohol in Arriaga's car. After Arriaga failed several sobriety tests, Harris arrested him on the charge of driving while intoxicated ("DWI").

Arriaga later filed a motion to suppress the evidence of intoxication on the grounds that Officer Harris had neither probable cause nor reasonable suspicion under the state and federal constitutions to conduct the stop. At the suppression hearing, Officer Harris testified that he was unable to recall the number of times he observed Arriaga drift within his lane. Harris testified that Arriaga's drifting could have been as great as seven times or as few as two times. Harris stated that at no time did Arriaga cross over his lane. On October 14, 1998, the trial court granted Arriaga's motion to suppress all evidence obtained from the arrest on the basis that no reasonable suspicion existed for an investigative detention. On appeal, the State argues that the trial court erred in granting the motion to suppress because the officer had reasonable grounds to conduct the stop.

### STANDARD OF REVIEW

Appellate inquiry into the issue of whether probable cause/reasonable suspicion exists for a warrantless arrest involves a mixed question of law and fact. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex. Crim.App.1997). As a general rule, almost total deference is given to a trial court's findings of fact, especially when those findings are based on an evaluation of credibility and demeanor. *Id.* However, appellate courts may review *de novo* mixed questions of law and fact not falling within this category. *Id.* Here, because the facts in Hill's report are undisputed and the trial court was not in a better position to ascertain the reasonableness of Arriaga's stop from those facts, a *de novo* review of the trial court's ruling is appropriate. *See id.* at 87.

### RELEVANT AUTHORITY AND APPLICATION

Article I, Section 9 of the Texas Constitution prohibits unreasonable searches and seizures. Warrantless searches are per se unreasonable unless they fall into a recognized exception. *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). The State bears the burden of establishing an exception to the warrant requirement. *Russell v. State,* 717 S.W.2d 7, 9–10 (Tex. Crim.App.1986). Consistent with the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause."

In the context of DWI investigatory detentions, the Court of Criminal Appeals in *Hulit v. State,* 982 S.W.2d 431, 432 (Tex. Crim.App.1998), set forth the totality of the circumstances test as the current reasonableness standard for reviewing warrantless arrests. *Id.* at 438. *Hulit* involved a DWI arrest where an officer came to the assistance of an unconscious motorist. The court held that the officer's approach of the appellant (who was slumped

over his steering wheel on the side of a public highway) was reasonable "not by finding that there is a community caretaking exception to a warrant requirement, but by asking whether, from the totality of the circumstances, after considering the public and private interests that are at stake, their action was an unreasonable seizure." *Id.* Subsequent courts interpreting *Hulit* recite the same reasonableness standard of totality of the circumstances for examining warrantless arrests. *See State v. Ross*, 999 S.W.2d 468, 470–71 (Tex. App.-Houston [14th Dist.], no pet. h.)(conducting a totality of the circumstances test to find that no probable cause existed for public intoxication arrest); *Sanders v. State*, 992 S.W.2d 742 (Tex.App.-Amarillo 1999, pet. filed)(affirming trial court's denial of motion to suppress illegal drug finding where sufficient evidence existed from the circumstances to find probable cause).

At the suppression hearing in the instant case, the court relied upon the holding in *State v. Tarvin*, 972 S.W.2d 910 (Tex.App.-Waco 1998, pet. ref'd). The warrantless arrest in *Tarvin* took place around 2:00 a.m., when the arresting officer observed the defendant drift to the right side of a two-lane road causing his tires to go "over" the solid white line at the right-hand side of the road on two or three occasions. *Id.* at 910–11. No dispute existed over whether the defendant left his lane of traffic or came near the oncoming lane. Rather, at issue in *Tarvin* was whether the defendant crossed the white line on the outside of the road and if this crossing constituted weaving in violation of an applicable ordinance. *Id.* at 911–12. The trial court held that touching the right-hand white line does not constitute weaving out of one's lane of traffic in violation of any traffic law.[1] The court distinguished plain weaving from activities which when coupled with weaving, justify an investigative stop. *Id; see Held v.*

*State*, 948 S.W.2d 45, 51 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd) (weaving back and forth across several lanes of traffic sufficient for temporary detention); *Taylor v. State,*, 916 S.W.2d 680, 681–82 (Tex.App.-Waco 1996, pet. ref'd) (weaving and traveling in excess of posted speed limit); *Fox v. State*, 900 S.W.2d 345, 347 (Tex.App.-Fort Worth 1995, pet. dism'd) (observing erratic speed changes and weaving along interstate justified investigatory detention). The court noted that the defendant never crossed another lane of traffic or exhibited difficulty maintaining a safe speed. Further, the arresting officer testified that no other traffic violations or other unusual activity occurred. *Id.* at 913. Finally, the court held that although mere weaving in one's own lane of traffic can justify an investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity, nothing in the record indicated that the arresting officer believed any of the above to be the case. *Id.*

Equally on point with the instant case is the holding in *Hernandez v. State*, 983 S.W.2d 867 (Tex.App.-Austin 1998, pet. ref'd). *Hernandez* involved a motion to suppress evidence of intoxication gained as a result of a traffic stop. *Id.* at 868. The defendant in *Hernandez* was stopped when the arresting officer observed a single swerve where the defendant crossed over into another lane on a five-lane road. The defendant was stopped approximately three or four seconds after the cross over. In determining whether probable cause existed, the court conducted a two-part test.

First, the court examined whether reasonable suspicion of driving while intoxicated existed. *Id.* at 870. Conducting a totality of the circumstances analysis, the court found that there are a myriad of reasons why the wheels of a vehicle might drift slightly across a lane marker a single

---

1. In pertinent part, Section 545.060 of the Transportation Code provides, "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely with a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060 (a) (Vernon 1998).

time. *Id.* Distinguishing the cases offered by the State, the court noted that fact-specific conduct of intoxication was absent in Hernandez's stop. For example, the State in *Hernandez* relied on cases where the defendant drifted and struck a grassy median kicking up dirt and grass and continued to weave two and three times,[2] weaved continuously line to line,[3] exited the interstate at high rates of speed,[4] and made improper turns.[5] The court in *Hernandez* held that the State failed to prove that the stop was reasonable because the arresting officer offered no evidence to show that he believed the defendant to be intoxicated. The court noted that the officer did not testify to any objective circumstances such as time, location, or vehicle movement that would have led a reasonable officer to suspect intoxication. Rather, the officer's sole basis for the stop concerned the driver's "well being." *Id.*

Second, the court conducted an analysis of whether reasonable suspicion of a traffic offense existed. 983 S.W.2d at 870. The court examined whether a single instance of crossing a lane of traffic traveling in the same direction when the movement is not shown to be unsafe or dangerous, gave the officer a reasonable basis for suspecting that the defendant had committed a "ticketable" (*i.e.,* criminal) traffic offense. *Id.* Focusing on the statutory language of the Transportation Code and the legislative history, the court held that a traffic offense exists for moving out of a marked lane only when the conditions are unsafe. *Id.* at 871.

Here, the State contends that Officer Hill was justified in stopping Arriaga based on the reasonable suspicion of a driver who needs assistance or who exhibits an erratic or unsafe driving pattern indicative of someone asleep at the wheel, intoxicated, or experiencing mechanical difficulty. The State urges that Arriaga's weaving constituted a questionable driving pattern which justified the investigatory stop. The State further urges that the stop was reasonable based upon the officer's nine years of experience and observation.

■ Using the totality of the circumstances test under *Hulit* as the benchmark for our analysis, we agree with Arriaga's claims that the State failed to present specific facts to justify a reasonable stop. Unlike the facts in *Held, Taylor,* and *Fox,* the State fails to offer facts which characterize Arriaga's driving as erratic, unsafe, or indicative of intoxication. Officer Harris failed to testify with any certainty to the number of times he observed Arriaga drift within his lane. Further, the officer's testimony as to the nature of Arriaga's stop (the location near the nightclub and the time of night) was not presented as a basis for the detention. *See Hernandez,* 983 S.W.2d at 870 (concluding that the State failed to offer objective circumstances such as time, location, vehicle movement to justify reasonable suspicion of intoxication). Rather, the officer testified that he detained Arriaga based upon his observation of Arriaga's drift which he states occurred anywhere between two and seven times over a one and a half mile radius. Without more, we conclude that the officer's stop amounted to an unreasonable search and seizure. Accordingly, the suppression order of the trial court is affirmed.

2. *Ortiz v. State,* 930 S.W.2d 849, 856 (Tex. App.-Tyler 1996, no pet).

3. *Davis v. State,* 923 S.W.2d 781, 784–88 (Tex. App.-Beaumont 1996), *rev'd on other grounds,* 947 S.W.2d 240 (Tex.Crim.App.1997).

4. *Raffaelli v. State,* 881 S.W.2d 714, 716 (Tex. App.-Texarkana 1994, pet. ref'd).

5. *Barraza v. State,* 733 S.W.2d 379, 380 (Tex. App.-Corpus Christi 1987), *aff'd,* 790 S.W.2d 654 (Tex.Crim.App.1990).