UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No.01-20407
SUMMARY CALENDAR

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

FREDDIE ANTHONY COSBY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(00-CR-558)

February 21, 2002

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges

REYNALDO G. GARZA, Circuit Judge:[1]


I.

Defendant-Appellant Freddie Anthony Cosby was driving in the middle of three traffic

lanes on a divided Houston street. Two police officers in a marked car behind him observed the

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

vehicle's left wheels travel across the lane markings on the left. Some ten to fifteen seconds later, the car swerved back to the right and the right wheels passed over the right lane markings. The officers then stopped Cosby for failing to maintain a single lane of traffic. Because he could not produce either a driver's license or proof of insurance, Cosby was arrested. During the inventory search of the vehicle incident to arrest, the officers discovered a loaded Beholla .32 caliber pistol underneath the driver's seat. It was later determined that Cosby was a convicted felon.

Cosby was indicted on one count of being a felon in possession of a firearm. He moved to suppress the seized handgun, arguing in part that police lacked reasonable suspicion to justify his initial traffic stop. Following an evidentiary hearing, the district court denied Cosby's motion to suppress. The court then held a bench trial on stipulated facts. Cosby was found guilty and sentenced to 18 months imprisonment.

II.

In reviewing a district court's denial of a motion to suppress following an evidentiary hearing, this court utilizes a "two-tier standard of review." *United States v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999), *cert. denied*, 528 U.S. 1144 (2000). This court accepts the district court's findings of fact unless clearly erroneous, but ultimate conclusions as to the constitutionality of law enforcement actions are reviewed de novo. *See id.* The evidence introduced at the suppression hearing is viewed in the light most favorable to the prevailing party, *id.,* while the burden to prove the stop was constitutional remains on the government. *See United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001), *cert. denied*, __U.S.__ (2002).

III.

Traffic stops are analyzed under the investigative detention standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, for a traffic stop to comply with the law, (1) the stop must have been justified at its inception, and (2) the officer's actions during the stop must have been reasonably related in scope to the circumstances justifying the stop in the first place. *See id.* at 9-10; *United States v. Crain*, 33 F.3d 480, 485 (5th Cir. 1994). To stop an automobile, a police officer must point to specific, articulable facts that, together with rational inferences from those facts, reasonably warrant the intrusion. *See Terry*, 392 U.S. at 21. This reasonableness is determined "by considering the totality of the circumstances, including the collective knowledge of all officers assessing the facts." *United States v. Coleman*, 969 F.2d 126, 129 (5th Cir. 1992).

Cosby focuses on *Terry*'s first prong, arguing that the traffic stop was not justified at its inception. Section 545.060(a) of the Texas Transportation Code states that an "operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060 (Vernon 1999).

Citing Texas case law and the language of the statute, Cosby asserts that only if the failure to maintain a single lane of traffic is unsafe is there a violation of the statute. *See* Brief for Appellant, 24-26 (*citing Corbin v. State*, 33 S.W.3d 90, 92 (Tex. App. 2000), *pet. for discretionary review granted*, (Tex. Crim. App. May 30, 2001); *State v. Cerny*, 28 S.W.3d 796, 800-01 (Tex. App. 2000); *State v. Arriaga*, 5 S.W.3d 804, 806 (Tex. App. 1999); *Hernandez v. State*, 983 S.W.2d, 867, 871 (Tex. App. 1998); *State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. App. 1998)).

3

Cosby maintains that the officers presented no facts to show that his driving was unsafe, particularly as there were no cars on either side of him when he swerved out of his lane. While one officer did testify that there no other cars beside either the officers' car or Cosby's, both officers testified that there was a moderate amount of traffic on the road at the time. Both officers testified that they observed Cosby's left tires cross over the left lane markers and then weave back across until the right tires had crossed the right lane markers. From the automobile's weaving it could be inferred that the driver failed to safely maintain a single traffic lane in violation of 545.060(a) of the Texas Transportation Code. Because one of the officers specifically stated that he felt Cosby's driving was unsafe, the facts are distinguishable from cases upon which Cosby relies. *See e.g. Hernandez*, 983 S.W.3d at 868 (officer testified that nothing about the driver's actions was inherently unsafe); *Tarvin*, 972 S.W.2d at 912 (nothing in record to indicate that the officer believed weaving in the lane was erratic, unsafe, or indicated intoxication); *Arriaga*, 5 S.W.3d at 806 (nothing in the record to indicate officer believed weaving was unsafe). It is quite reasonable for an officer to find that weaving on a major street of a large city during a period of modest traffic is unsafe. Thus, we find that the initial stop of Cosby's vehicle was warranted.

IV.

Cosby argues that the stipulated evidence is insufficient to sustain a conviction because the movement of a firearm from one state to another at an undetermined time in the past does not constitute a "substantial" effect upon the interstate commerce element of 18 U.S.C. § 922(g). *See* Brief for Appellant, 22-28. While Cosby cites two recent Supreme Court decisions, *United States v. Morrison*, 529 U.S. 598 (2000) and *Jones v. United States*, 529 U.S. 848 (2000), as support,

4

he recognizes that this court has recently found *Morrison* and *Jones* distinguishable from §922(g) cases. *See United States v. Daugherty*, 264 F.3d, 518 (5th Cir. 2001) (holding that *Morrison* and *Jones* are distinguishable from Section 922(g) cases "because a plain jurisdictional element exists in § 922(g), and [as here] there is stipulated evidence to show that the gun traveled in interstate commerce)." Cosby concedes that *Daugherty* forecloses this issue on appeal; he raises it only to preserve the issue for Supreme Court review. As this court is bound by its prior decision in *Daugherty*, this appeal is without merit.

AFFIRMED.