

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-270-CR

NANCY CAROL KESSLER                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1] ON REHEARING

------------

I. Introduction

    After reviewing Appellant's motion for rehearing, we deny the motion. We withdraw our January 14, 2010 opinion and judgment and substitute the following.

---

[1] *See* Tex. R. App. P. 47.4.

Appellant Nancy Carol Kessler appeals her conviction for driving while intoxicated (DWI). In two points, Appellant contends the trial court erred by denying (1) her motion to suppress evidence acquired because of a warrantless stop and (2) a jury instruction to disregard any evidence that the jury believed was illegally obtained. We will affirm.

II. Factual and Procedural Background

While responding to an unrelated call[2] shortly after 2:00 a.m. on December 29, 2007, Officer Caleb Goodman of the Grapevine Police Department brought his marked patrol car to a stop directly behind Appellant's vehicle at a red light on Main Street at the Northwest Highway intersection. After the traffic light turned green, Appellant's vehicle accelerated from a stop, stayed to the right through the intersection, and made an abrupt, evasive maneuver to the left to avoid hitting the curb at the northeast corner of the intersection. Officer Goodman activated his in-car video camera,[3] initially believing that the driver was (1) not paying attention, (2) suffering from a

---

[2]... Officer Goodman testified the call was for an alarm or loud disturbance.

[3]... The trial court admitted the video into evidence and granted permission to publish it during the hearing without objection. Officer Goodman testified that he captured video footage of Appellant's car moving through the intersection and almost striking the curb because the video camera is always on and records footage from thirty seconds before the camera's activation. The jury also viewed the video.

2

medical condition, or (3) intoxicated. Shortly after traveling through the intersection, Appellant's vehicle moved halfway into a designated left-turn lane but continued traveling straight on North Main Street.

When Officer Goodman activated his overhead lights, Appellant pulled over into a nearby parking lot. Based on Appellant's driving behavior and Officer Goodman's observations after making the stop, Goodman placed Appellant under arrest for DWI.[4]

In a pretrial motion, Appellant moved to suppress all evidence from the traffic stop. The trial court held a hearing on Appellant's motion on July 21, 2008. Officer Goodman testified at the hearing that based on his training and experience, he thought it reasonable to believe that Appellant might be intoxicated based on (1) the time of day, (2) the numerous locations selling alcoholic beverages that close at 2:00 a.m. in that area, (3) the vehicle's abrupt move to the left to narrowly miss a curb, and (4) then not driving in a single lane. Officer Goodman further testified that he did not believe Appellant's driving behavior constituted a traffic violation.[5]

---

[4]... Officer Goodman testified Appellant slurred her speech, smelled of alcohol, performed the standardized field sobriety tests poorly, and had lost the normal use of her mental and physical faculties.

[5]... Appellant's testimony at trial is almost identical to the testimony he presented during the hearing on Appellant's motion to suppress.

On cross-examination, Appellant's counsel attempted to impeach Officer Goodman with his testimony during Appellant's Administrative License Revocation (ALR) hearing in May 2008, in which the following exchange had occurred:

> Q: "Was there any other traffic violation for which you stopped her?"
>
> A: "No, sir." That was my response [at the ALR hearing].
>
> Q: And then after that?
>
> . . . .
>
> A: "Just failure to drive in a single lane. Yes."
>
> Q: All right. Would you agree that was your sworn testimony back in May of this year?
>
> . . . .
>
> A: Yes, sir.
>
> Q: Involving the same stop?
>
> A: Yes, sir.
>
> . . . .
>
> Q: At no time during the hearing of the ALR did you ever suggest, let alone mention, that you believed you had reasonable suspicion to stop that vehicle because it might be being driven by an intoxicated person, correct?

4

> A: I haven't read the transcript, but, sir, I don't recall being asked. And, no, sir, I don't recall responding to that question.

Officer Goodman also testified that in neither the narrative's or DWI case report's "probable cause" sections did he write that he suspected Appellant might not be paying attention, might be suffering from a medical condition, or may be intoxicated—nor did he write about his training and experience that caused him to believe Appellant might be intoxicated as a result of his observations. He explained that he "merely documented things that could lead [him] to believe that was what was occurring." In the three-page narrative, he wrote that the probable cause for the stop of Appellant's vehicle was:

> [t]hat it came very close to striking a curb in the area where signal light post which controls northbound traffic intersection is located, that it had to take evasive action and avoid striking the post and curb and drove with both left-side tires . . . in lane designated as left-turn only lane.

In his DWI Case Report, Officer Goodman wrote: "Failed to drive in single lane—almost struck curb/drove straight through lane designated left turn," under the subheading of "Probable cause/reasonable suspicion for stop."

However, Officer Goodman testified that his "experience, working wrecks and doing DWI enforcement" led to his belief that the Appellant might be intoxicated. Officer Goodman further testified:

5

I mean, it's very, very common to see a vehicle not stay in the one lane when a person's intoxicated. I can't list all the cases that I've had in the past to suggest that, but I've got lots of pictures of cars wrapped around poles and—which have struck curbs, which has taken faulty evasive action, as a result of being in the wrong lane, which resulted in a collision.

Officer Goodman agreed that he had no knowledge of where Appellant had been that evening or that she needed medical assistance. However, he also said he did not draw a conclusion that Appellant was intoxicated based on her driving:

Q: Do you believe it's important to put in a DWI case report and a DWI narrative your conclusions regarding a person's being intoxicated?

A: Yes, sir.

Q: And do you believe that it's important to put in there the facts that support those conclusions?

A: Yes, sir.

Q: But you did not recite in either one of those, either the DWI case report or the narrative, a conclusion that you thought she was intoxicated because of her driving habits; isn't that right?

A: Sir, I didn't form that conclusion by observing her driving.

At the conclusion of the hearing, the trial court denied Appellant's motion to suppress without making findings of fact or conclusions of law.

At trial, Appellant pleaded not guilty to the DWI charge. On cross-examination, Officer Goodman admitted he testified under oath at Appellant's

6

ALR proceeding that he had reason to believe Appellant violated a traffic law by failing to maintain a single lane of traffic; that he also thought Appellant was either "(a) intoxicated, (b) having a medical condition, or (c) just not paying attention to the roadway"; and that he was "testifying [to] the same thing [at trial] as [he] was [during the ALR proceeding]."

During the charge conference, Appellant requested a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure regarding the validity of Officer Goodman's stop of Appellant's vehicle. The trial court denied Appellant's jury instruction request. A jury convicted Appellant of DWI, and the judge sentenced her to a fine of $550 and sixty days in jail, probated to eighteen months on community supervision.

III. Discussion

A. Motion to Suppress

In her first point, Appellant contends that the trial court erred by denying her motion to suppress because Officer Goodman's stop of Appellant's vehicle cannot be justified either by reasonable suspicion to believe Appellant was intoxicated or by the proper exercise of a police officer's community caretaking function. The State argues that the evidence shows Officer Goodman had sufficient reasonable suspicion that a crime was being committed to justify his

initial detention of Appellant and that her failure of the field sobriety tests gave him probable cause to arrest her for driving while intoxicated.

## 1. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when

8

application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004). The historical facts in this case are not disputed; therefore, we review the ruling on the motion to

suppress de novo. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).

In reviewing the suppression determination, we are deferential to the trial court and will reverse only if the decision is unsupported by the record. *Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993). In determining whether a trial court's decision is supported by the record, we generally consider only the evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996); *Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984). However, this general rule is inapplicable when the suppression issue has been consensually re-litigated by the parties during trial on the merits. *Rachal*, 917 S.W.2d at 809. Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our review. *Id.*; *see also Webb v. State*, 760 S.W.2d 263, 272 n.13 (Tex. Crim. App. 1988), *cert. denied*, 491 U.S. 910 (1989).

2.  Applicable Law and Analysis

The Fourth Amendment[6] protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.  Once the defendant makes this showing, the burden of proof shifts to the State, which must then establish that the government agent conducted the search or seizure pursuant to a warrant or that the agent acted reasonably.  *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868,

---

[6] Appellant makes no argument that the stop violates the Texas Constitution independent of the protection afforded by the Fourth Amendment. *See, e.g., Hulit v. State*, 982 S.W.2d 431, 437 (Tex. Crim. App. 1998). Therefore, we analyze Appellant's claim solely under the Fourth Amendment. *See State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998).

1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).[7]  Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  *Ford*, 158 S.W.3d at 492.  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.  *Id*.

Because the trial court did not file findings of fact and conclusions of law, we must determine whether the evidence, viewed in the light most favorable to the trial court's decision to deny the motion to suppress, supports implied findings supporting that decision.  *See Kelly*, 204 S.W.3d at 819.  In other words, we must determine whether Officer Goodman testified to specific, articulable facts justifying his detention of Appellant.  *See id.*

Appellant's argument asks us to judge the validity of the stop based on Officer Goodman's mistaken subjective belief that Appellant committed a traffic

---

[7] Because a routine traffic stop typically involves only a short, investigative detention, as opposed to a custodial arrest, we analyze traffic stops under the principles developed for investigative detentions set forth in *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880; *see Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138 (1984); *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, no pet.).

12

violation. Appellant contends that even though Officer Goodman testified that he had three possible reasons for stopping Appellant's vehicle, the fact that Officer Goodman did not include this information in his contemporaneous reports shows that he was being untruthful.

However, the trial court obviously believed Officer Goodman's testimony, and we must defer to its assessment of Officer Goodman's credibility. *Ross*, 32 S.W.3d at 855. Thus, we must take as true Officer Goodman's testimony that he thought Appellant could have been intoxicated based upon his training and the specific instances of Appellant's driving he observed. *Hughes v. State*, No. 02-07-00370-CR, 2008 WL 4938278, at *3 (Tex. App.—Fort Worth Nov. 20, 2008, pet. ref'd) (mem. op., not designated for publication). And, as stated above, we must determine whether reasonable suspicion existed based upon an objective standard considering the totality of the circumstances, not upon the officer's subjective intent in making the stop. *Ford*, 158 S.W.3d at 492. Thus, we must determine whether the objective facts testified to by Officer Goodman show that he had reasonable suspicion to justify stopping Appellant, regardless of the reasons stated in his report. *Curtis v. State*, 238 S.W.3d 376, 380–81 (Tex. Crim. App. 2007).

Here, Officer Goodman observed Appellant abruptly swerve to the left to avoid a curb shortly after 2:00 a.m., which is when local bars closed.

13

Appellant also failed to drive the car within a single lane of traffic, moving "the majority of the vehicle" into a designated left-turn lane while continuing to drive straight. Officer Goodman testified that based on his experience, narrowly avoiding a curb with such a quick movement and failing to remain in a single lane were signs of possible intoxication.

Appellant argues that these observations do not constitute evidence of fact-specific conduct of intoxication, and thus, Officer Goodman had no reasonable suspicion to stop Appellant's vehicle. Appellant relies on *Bass v. State*,[8] *State v. Arriaga*,[9] *State v. Tarvin*,[10] and *Hernandez v. State*.[11]

In *Bass* and *Hernandez*, the State failed to carry its burden to show articulable facts that demonstrated the reasonableness of the stop of appellants' vehicles on the basis of a suspicion appellants were intoxicated because the officer neither testified that, based on his experience, he subjectively suspected appellants of being intoxicated, nor that anything about the objective circumstances—time, location, or the vehicle's movement—would

[8] 64 S.W.3d 646 (Tex. App.—Texarkana 2001, pet. ref'd).

[9] 5 S.W.3d 804 (Tex. App.—San Antonio 1999, pet. ref'd).

[10] 972 S.W.2d 910 (Tex. App.—Waco 1998, pet. ref'd).

[11] 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd).

have led a reasonable officer to suspect [appellants] were intoxicated. *Bass*, 64 S.W.3d at 650; *Hernandez*, 983 S.W.2d at 870.

The *Arriaga* court held that the State had failed to present specific facts that characterized the appellant's driving as indicative of intoxication to justify a reasonable stop when the officer was unable to testify with any certainty the number of times he observed appellant's vehicle drift within his lane. *Arriaga*, 5 S.W.3d at 807. In *Tarvin*, the court noted that, although the officer observed Tarvin's weaving within his own lane of traffic, the officer "never testified that he was conducting an investigatory stop, nor did he testify to suspecting any criminal activity other than weaving out of the lane." *Tarvin*, 972 S.W.2d at 912.

Here, unlike the facts in the above cases, Officer Goodman testified that, based on his training and experience, he believed that Appellant might be driving while intoxicated given the specific manner in which she operated the vehicle in conjunction with the time of night and location. In addition, he testified that he stopped the vehicle to investigate why Appellant was driving erratically.

We find the facts in this case similar to *Hughes v. State*, in which this court concluded an officer testified to specific, articulable facts that would lead a reasonable person to conclude that the car's driver was possibly driving while

15

intoxicated. 2008 WL 4938278, at *4. In *Hughes*, the driver had trouble remaining in a single lane of traffic, almost ran into a curb, and drove well below the speed limit around 2:00 a.m., when local bars were closing. However, unlike the officer in *Hughes*, Officer Goodman did not testify that the sole reason for stopping Appellant's car was failure to maintain a single lane of travel. *Id.* (McCoy, J., dissenting). Officer Goodman instead testified that he had multiple reasons for stopping Appellant, including reasonable suspicion to believe Appellant might be driving while intoxicated.

In addition, we find these facts distinguish this case from *Fowler*, in which this court determined the facts testified to by the officer initiating the traffic stop, even if believed by the trial court, were not sufficient to establish reasonable suspicion of either DWI or a violation of the Texas Transportation Code. *Fowler v. State*, 266 S.W.3d 498, 504–05 (Tex. App.—Fort Worth 2008, pet. ref'd) (en banc) (holding that an officer's honest but mistaken understanding of the traffic law, which was the sole reason for making the stop, is not an exception to the reasonable suspicion requirement).

Viewing the evidence in the light most favorable to the trial court's ruling, we hold that Officer Goodman testified to specific, articulable facts that would lead a reasonable person to conclude that Appellant was possibly driving while intoxicated. *Curtis*, 238 S.W.3d at 380–81; *James v. State*, 102 S.W.3d 162,

16

172 (Tex. App.—Fort Worth 2003, pet. ref'd). Thus, the trial court did not abuse its discretion by finding that Officer Goodman had reasonable suspicion to stop Appellant, and it properly denied Appellant's motion to suppress. We overrule Appellant's first point.

B. Trial Court's Denial of Jury Instruction

In her second point, Appellant argues that the trial court erred by denying her request to instruct the jury to disregard any illegally obtained evidence.[12] *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). Appellant contends she was denied her right to have the jury make a factual finding because her requested jury instruction addressed the factual basis for the legitimacy of Officer Goodman's stop of Appellant's vehicle. The State counters that there was no material fact issue concerning the lawfulness of Officer Goodman's stop.

Under article 38.23 of the code of criminal procedure, no evidence obtained in violation of the federal or state constitutions or laws may be admitted in evidence against the accused. *Id.* When the evidence raises an issue regarding a violation, the jury must be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the law, it

---

[12] Appellant made a verbal request for the instruction during the charge conference.

must disregard the illegally obtained evidence. *Id.* A defendant's right to the submission of a jury instruction under article 38.23 is limited to disputed issues of fact that are material to her claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id.* at 513. "A fact issue about whether evidence was legally obtained may be raised 'from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable.'" *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (citing *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, writ ref'd)). If there is no dispute regarding the factual basis for the challenged seizure, then the legality of the conduct is determined by the trial judge alone—as a question of law—and a jury instruction is inappropriate. *Madden*, 242 S.W.3d at 510; *Garza*, 126 S.W.3d at 85.

Appellant's requested jury instruction raises a question of law because it does not contest any of the essential facts that led Officer Goodman to stop her vehicle. *See Brooks v. State*, 707 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (stating that where the essential facts concerning a search or an arrest are not in dispute, the legality of the search or arrest is a

18

question of law).  Appellant testified she was at an establishment that served alcohol until the establishment's 2:00 a.m. closing time.  She also testified that this establishment was less than a mile from the intersection where she had to "move [her] car, the steering wheel, towards the left" because she almost hit the curb.[13]  Appellant also admitted the left tires of her vehicle and part of her vehicle later moved into the designated left-turn lane.  On cross-examination, Appellant agreed that her driving behavior gave Officer Goodman "a reason to want to pull me over."  Thus, Appellant did not dispute any pertinent fact that Officer Goodman stated he relied on in forming a reasonable suspicion Appellant might be driving while intoxicated, and the record contains no affirmative evidence placing the existence of a material fact to Appellant's claim of a constitutional or statutory violation into question.  *See Madden*, 242 S.W.3d at 513; *see Brooks*, 707 S.W.2d at 706.

Appellant contends that on cross-examination, Officer Goodman admitted he stopped the vehicle for having violated a traffic law—not for any of the three reasons he stated in his direct testimony—and that his conflicting testimony raised a material fact issue for the jury.  However, a cross-examiner's questions

---

[13] ... Appellant testified that she almost hit the curb after being distracted because her cell phone "went off."  However, upon being stopped, she did not tell Officer Goodman about her cell phone going off and admitted to him that she could hear herself slurring her words.

19

do not create a conflict in the evidence, although the witness's answers to those questions might. *Madden*, 242 S.W.3d at 513. Even the most vigorous cross-examination implying that Officer Goodman was lying about why he stopped Appellant does not raise a disputed issue. *See id.* at 514; *Cerda v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (impeachment of officer as to why he stopped a driver did not create a factual dispute for purposes of art. 38.23(a)); *see also Trent v. State*, 925 S.W.2d 130, 133 (Tex. App.—Waco 1996, no writ) (holding cross-examination of officer did not raise factual dispute for purposes of article 38.23(a) and rejecting defendant's contention that although "he did not present any controverting evidence on the legality of the arrest, . . . he sufficiently attacked the credibility of [witness] to require an instruction); 40 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure § 4.194 (2d ed. 2001) (noting that "a fact issue is not generated by the possibility that the jury may disbelieve all or some of [the State's] testimony").

Here, a thorough review of the record reveals that Officer Goodman's answers to trial counsel's questions on cross-examination were insufficient to warrant an article 38.23(a) jury instruction because his responses failed to raise a disputed fact issue for the challenged detention. *See Madden*, 242 S.W.3d at 513. Officer Goodman admitted that he testified during the May 2008 ALR

20

hearing that he believed he had probable cause to believe Appellant violated a traffic law by failing to remain in her lane. However, Officer Goodman did not agree with Appellant's trial counsel that Appellant's inability to remain in her lane was the sole reason he stopped Appellant; he recalled it was only "one of the things" that gave him reasonable suspicion to stop Appellant's car to determine if she was driving while intoxicated. As in *Cerda* and *Trent*, an implication arising by questions posed during cross-examination that Officer Goodman was untruthful does not raise a factual dispute requiring an article 38.23(a) jury instruction. *See Cerda*, 68 S.W.3d at 217; *Trent*, 925 S.W.2d at 133.

Appellant was not entitled to her requested jury instruction because there was no conflict in the evidence that raised a disputed fact issue material to the legal question of whether Officer Goodman could stop Appellant. Appellant's requested instruction instead asked the jury to make a legal determination. *See Madden*, 242 S.W.3d at 510. Therefore, we overrule Appellant's second point.

21

IV. Conclusion

Having overruled both of Appellant's points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 25, 2010